UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:06-CR-13-KKC-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| WILMER MARCUS MELENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from Chief Judge Caldwell (D.E. 39), the Court considers reported violations of supervised release conditions by Defendant Wilmer Melendez.

**I.**

Chief Judge Caldwell entered a judgment against Defendant in November 2006 for knowingly possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). D.E. 32. Defendant received a sentence of 132 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k). *Id.* at 2-3. Defendant began his supervised release on September 18, 2015.

On June 21, 2017, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations.

First, the Report charges a violation of the Special Condition concerning restricted materials. D.E. 32 at 4. This condition states that Defendant "shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available." *Id*. According to the Report,

On June 6, 2017, the defendant submitted to a polygraph exam at the Frankfort Probation Office. It was learned through both the pretest, as well as the polygraph exam, the defendant had accessed a website by the name of "Grindr." Grindr is a gay social network app, wherein the defendant would solicit random acts of sex, from various individuals, via his cell phone. In particular, the defendant acknowledged traveling to Vine Grove, Kentucky, where he met an unnamed male subject with whom he subsequently engaged in oral sex. The act was videotaped and forwarded to the defendant via his cell phone.

This is a Grade C violation.

Violation #2 (which the government subsequently moved to dismiss) charges a violation of another provision of the Special Condition regarding restricted materials. That provision states that Defendant "shall not possess or use a device capable of creating pictures or video, without prior approval of the United States Probation Officer." D.E. 32 at 4. According to the Report, also on June 6, "a search of the defendant's cell phone led to the discovery of numerous graphic pornographic images, a majority of which were made by cell phone and forwarded to the defendant by various individuals. There were also numerous sexually explicit photographs the defendant had taken of himself." This is a Grade C violation.

Violation #3 charges a violation of Standard Condition #1, which prohibits Defendant from leaving the judicial district without the permission of the Court or the probation officer. This alleged violation is based on the conduct described in Violation #1, which involved traveling to Vine Grove, in the Western District of Kentucky. This is a Grade C violation.

**II.**

The Court conducted an initial appearance pursuant to Rule 32.1 on July 5, 2017, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 42. At the initial appearance, the United States moved for interim detention; Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the

Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on July 12, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 44. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #3. *Id.* The government moved to dismiss Violation #2 because the probation officer had given Defendant permission to possess a cellphone that was capable of taking pictures. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #3, thus the government established both under the standard of § 3583(e).

At that hearing, although the parties argued for different terms of imprisonment, they agreed that reimposition of lifetime supervision was appropriate. However, Defendant's lifetime supervision was imposed prior to the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), which requires close examination of the imposition of a lifetime term of supervised release. The Court continued the final hearing in order to research the impact of *Inman* on Defendant's lifetime supervision and his special conditions of release.

The final hearing reconvened on July 24, 2017, and the Court announced the recommended sentence. D.E. 46.

**III.**

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to knowing possession of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute Grade C violations. Given Defendant's Criminal History Category of IV (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months.

**IV.**

At the final hearing, the government recommended eight months of incarceration. The defense presented three options. The first was to continue the sentencing for six months to see how Defendant performed under his counselor's new recommended sex offender treatment plan before imposing a sentence. The second option involved no revocation, but rather increased restrictions on Defendant's access to the internet and cameras. The defense's third option was a sentence of time served (which at that point was seven days). The government requested reimposition of lifetime supervision, and the defense did not argue against it.

The government began by stressing the amount of trust the Court has given Defendant, especially in light of the fact that he pleaded guilty to sodomy of a thirteen-year-old boy in 1992. This conviction, the government stressed, is conceptually related to his underlying federal

4

offense of child porn possession. According to the government, Defendant's revocation conduct, which involved Defendant filming himself having sexual relations with a younger (though adult) male, echoed his previous crimes. The government acknowledged that Defendant's revocation conduct involved adults, not children, but emphasized that Defendant's conduct was alarming for a person with a prior conviction for child molestation. The government emphasized that the Probation Office had trusted Defendant with access to a cellphone, but that Defendant breached that trust by using it to produce and receive pornography, and to use an app (Grindr) that was forbidden by Defendant's terms of supervised release.

Thus, according to the government, there were several layers of violations. Using Grindr to arrange the meeting was a violation. And he used Grinder numerous times. Leaving the District to meet a man for sex was a violation. Then, Defendant further violated his release conditions by using his phone not only to receive and possess pornography, but to produce it while outside the District. The violations were further aggravated by Defendant's failures during the polygraph examination. This duplicity was an echo of Defendant's criminal history, which includes thefts perpetrated by deception.

On the positive side, the government noted that Defendant's probation officer and treatment provider nurture hope for Defendant, and have crafted a treatment plan to help direct his future.

However, the government argued that the need to protect the public is "extraordinarily strong" when Defendant has a "contact offense" in his criminal history. Pornography is forbidden because its use could be a "dangerous slope" to another contact offense against a minor. The government further argued that the need to deter criminal conduct is heightened in

5

this case because of the pornography production (albeit of adults) and the fact that Defendant committed not an isolated violation, but a series of related violations.

The government argued that, while Defendant's conduct could support a sentence of imprisonment at the top of the Guidelines Range or even the statutory maximum, eight months would be sufficient because Defendant stipulated to the violations and because he shows "promise" in light of his treatment provider's faith in him.

The defense "vehemently" disagreed with the government's argument that Defendant's violation conduct was a mirror image of his past molestation offense. According to the defense, the man described in Violation #1 is a 39-year-old father. The defense further argued that the video was delivered to Defendant via an unsolicited text message.

The defense argued that a 25-year-old conviction (for sodomy of a minor), known to the Court all along, should not be the driving force behind Defendant's revocation sentence. The defense pointed out that the violations were Grade C, and the Guidelines do not mandate revocation on a Grade C violation. Although Defendant is already on lifetime supervised release under stringent conditions, the defense argued that the Court could further punish Defendant by taking away his phone or completely eliminating his access to the internet or to any sort of camera.

The defense further argued that the proposed treatment plan would also protect the public and serve to deter Defendant from committing other crimes. According to the defense, the treatment plan demonstrated that an expert believes he can succeed. Defendant's past week in jail had been a "wake-up call," and he admitted his violations. Although he did leave the District, the defense argued that Defendant returned. He had been reporting to Probation as instructed and obeyed the summons to appear in Court on these violations. Although

Defendant's treatment has not been perfect, the defense argued, it had been generally effective, and should continue, particularly given a letter from Defendant's treatment provider attaching an individual treatment plan approved by USP Officer Cotton and signed by Defendant. According to the defense, Defendant had worked until he became ill. He was taking college classes and doing well in his studies.

Defendant addressed the Court and apologized. He said he had been working hard to better himself, and hoped to graduate college in a few months. He said he had surprised himself by making the Dean's list six times. He is proud of what he has accomplished. He had been promoted at his job, but unfortunately underwent several surgeries in the past year, which prevented him from working. Defendant said he had been trying to do the right thing.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of six to twelve months. The Court recommends revocation of seven months, followed by lifetime supervised release, but under a revised set of special conditions.

Regarding the circumstances of the offense of conviction, possession of child pornography is a serious matter because of the great harm it causes to the victims. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553a)(1) refers to "the original offense of conviction"). The harm lingers forever, as the internet imbues the images of the victims' abuse with immortality.

Regarding Defendant's history and characteristics, there is a significant risk here, particularly concerning the contact offense against a child in Defendant's history. One of Defendant's identified sexual partners is 21 years old. And this age difference between

7

Defendant and one of his partners raises the specter of a lapse into pursuing children.  Thus, in light of his history, Defendant's violation conduct signals a potent need to protect the public.

Regarding the need for education and treatment, the parties and the Court agree that Defendant needs continued treatment.  The treatment provider has crafted a new, individualized program for Defendant, endorsed by the probation officer.  Upon release, Defendant should return to his provider and be required to complete that program of treatment.  But, the Court does not believe that program is a sufficient substitute for incarceration because the breach of trust factor addressed herein.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b).  In this case, as revealed during the polygraph examination, Defendant has been dishonest about his violation conduct.  This takes a downward departure off the table.  *See Johnson*, 640 F.3d at 205 (requiring the Court to justify any departure from the Guidelines Range with adequate and specific reasons).  His lies show he knew he violated his release conditions and cause the Court to question the efficacy of treatment unless Defendant learns to be honest with himself, the USPO, and the Court.  The new sentence is meant as a message to Defendant that further dishonesty will not be tolerated.

One final factor the Court must consider is the need to avoid unwarranted sentencing disparities.  This factor is usually addressed by imposing a within-Guidelines sentence.

Based on the above discussion, the Court believes that a sentence of seven months of incarceration is sufficient, but not greater than necessary, to address the statutory sentencing factors.  A sentence slightly below the middle of the Guidelines Range is appropriate in light of the facts that Defendant will be undergoing an intensive and personalized treatment program

upon release, and that he will continue to be subject to lifetime supervision on stringent conditions.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 18 U.S.C. § 3583(h), he faces a life maximum term of supervised release following revocation.

The Court recommends reimposition of lifetime supervision. Lifetime supervision is authorized by 18 U.S.C. § 3583(k) and is consistent with the policy statement at Guideline 5D1.2(b). The standard conditions should be reimposed. In light of the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), the Court will examine each individual special condition. Instead of the conditions that were imposed on Defendant at his original sentencing, the Court will recommend imposition of the Special Conditions adopted by the District for sex offenders following *Inman*. These current recommended special conditions differ slightly from those originally imposed on Defendant. The conditions are as follows:

### SPECIAL CONDITIONS OF SUPERVISION

    1. The defendant shall participate in a program for treatment of mental health/sexual disorders; shall undergo a sex offender risk assessment, psychosexual evaluation and/or other evaluation as needed; shall be subject to periodic polygraph examinations and/or Computer Voice Stress Analysis (CVSA) testing, at the discretion and direction of the probation officer; and, shall follow the rules and regulations of the sex offender treatment program as implemented by the probation office.

    2. The defendant's residence and employment shall be pre-approved by the probation officer and in compliance with state and local law.

3. The defendant shall not frequent, volunteer, or work at places where children under the age of 18 congregate (e.g. playgrounds, parks, day-care centers, public swimming pools, youth centers, video arcade facilities) unless approved by the probation officer, and shall have no contact with victims.

4. The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18 without the permission of the probation officer. This provision does not encompass persons under the age of 18 such as ticket vendors, cashiers, waiters, etc., with whom the defendant must deal in order to obtain ordinary and usual commercial services.

5. The defendant shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available.

6. The defendant shall not possess or use a device capable of creating pictures or video, without the approval of the probation officer.

7. The defendant shall not rent or use a post office box or storage facility, without the approval of the probation officer.

8. The defendant shall register as a sex offender as prescribed by state law.

9. The defendant shall not possess or use a computer or any electronic device with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system, or any other public or private network or email system.

10. The defendant shall consent to the U.S. Probation Office conducting unannounced examinations of any and all electronic devices (i.e. computer system(s), internal/external storage devices, hand-held devices, etc.), which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection and will consent to having installed on his computer(s) or electronic devices any hardware/software to monitor device use or prevent access to particular materials, and to consent to periodic inspection of any such installed hardware/software to insure it is functioning properly.

11. The defendant shall provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and all electronic devices; all account user names; all passwords used by him; and, will abide by all rules of the Electronic Device Restriction and Monitoring Program.

12. The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search conducted by the United States Probation Office, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of supervision. The defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

13. The defendant shall provide the probation officer with access to any requested financial information.

14. Ten years after the date of Judgment, the Court will conduct a hearing to review Defendant's status and reevaluate Defendant's conditions of supervised release.

In light of *Inman*, these conditions are appropriate for the reasons stated on the record during the July 24 hearing, as summarized below:

Special Condition #1, concerning treatment, is necessary in light of Defendant's history of sexual crimes. His violation behavior also shows he is capable of risky conduct. Continued use of polygraph examinations is warranted because of his history of dishonesty with the USPO. Notably, the defense focused its presentation on the need for continued sex offender treatment.

Special Condition #2, concerning pre-approval of Defendant's residence and employment, is needed to help Defendant comply with state sex offender laws.

Special Conditions #3 and #4, concerning contact with minors, are justified based on Defendant's prior molestation offense and prior possession of child pornography. The similarities between his violation behavior and his molestation and child pornography use heighten this justification. Following *Inman*, these conditions were rewritten to allow contact with minors upon approval of the probation officer.

Special Conditions #5 and #6 are crafted to eliminate Defendant's access to pornography. Here, Defendant has demonstrated that he poses a risk to vulnerable victims. Access to sexually

11

stimulating material enhances that risk. Defendant has already produced pornography (although not an illegal version) without the USPO's approval. In light of his history, the USPO must be involved in the selection and configuration of Defendant's electronic devices. They need to know what devices and access he has, and what he can do with them. This condition is not a blanket prohibition, but allows for possession of such items after sufficient safeguards and monitoring strategies are in place, and is not more restrictive than necessary.

Special Condition #7, concerning post office boxes and storage facilities, is designed to help the USPO detect any use of sexually stimulating materials. The post-*Inman* version of this condition does not prohibit alternative addresses or storage facilities, but requires their disclosure to the USPO to diminish Defendant's ability to circumvent other conditions of his release.

Special Condition #8, requiring Defendant to register as a sex offender as prescribed by state law, is specifically contemplated in 18 U.S.C. § 3583(d).

Special Conditions #9, #10, and #11, regulate Defendant's access to electronic devices and permit inspection by the USPO. These conditions have been updated to address changes in technology. Defendant has displayed skill in using electronic devices such as computers and cellular phones to obtain and create pornography. These devices are becoming increasingly difficult to monitor, as Defendant himself has demonstrated. These conditions will enable the USPO to have knowledge of, and access to, any electronic devices and related hardware and software. These conditions will help deter further criminal and violation conduct and protect the public from the risks associated with pornography use by Defendant.

Special Condition #12, concerning searches, is authorized by § 3583(d). Because Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

Special Condition #13, concerning financial disclosures, is designed to help the USPO monitor Defendant's purchases of electronic devices, internet services, and anything else implicated by the other conditions of supervised release.

Special Condition #14, concerning a reevaluation of these conditions after ten years, is recommended because the Court cannot predict the extent of supervision necessary at that time and what technological changes may occur in the future. A reevaluation will enable the Court to adjust Defendant's conditions to address any of his emerging needs, any advances in technology, and any changes in the law that may occur. This review does not limit the USPO's ability to seek a modification of the conditions of release prior to the ten-year review.

Defendant's original special conditions included a prohibition on alcohol consumption, but this special condition is not necessary at this juncture. Defendant does not appear to have a history of alcohol abuse, so a total prohibition is not supported by the record. Defendant remains subject to Standard Condition #7, which prohibits "excessive use of alcohol."

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. Revocation with a term of incarceration of seven months;
2. That Violation #2 be dismissed; and
3. Reimposition of lifetime supervision, except that Defendant's Special Conditions should be replaced by the new, post-*Inman* conditions as described in Section V, including a review after ten years of Defendant's progress and his conditions.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 1st day of August, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge