UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:06-CR-13-KKC-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| WILMER MARCUS MELENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Caldwell (D.E. 61), the Court considers reported violations of supervised release conditions by Defendant Wilmer Melendez. This is his third set of revocation proceedings.

**I.**

Judge Caldwell entered a judgment against Defendant in November 2006 for knowingly possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). D.E. 32. Defendant received a sentence of 132 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k). *Id.* at 2-3. Defendant began his first term supervised release on September 18, 2015.

On June 21, 2017, the United States Probation Office ("USPO") issued a report charging three violations. According to that report:

> On June 6, 2017, the defendant submitted to a polygraph exam at the Frankfort Probation Office. It was learned through both the pretest, as well as the polygraph exam, the defendant had accessed a website by the name of "Grindr." Grindr is a gay social network app, wherein the defendant would solicit random acts of sex, from various individuals, via his cell phone. In particular, the defendant acknowledged traveling to Vine Grove, Kentucky, where he met an

unnamed male subject with whom he subsequently engaged in oral sex. The act was videotaped and forwarded to the defendant via his cell phone.

Defendant stipulated to two violations: (1) violating the condition that he not "possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available;" and (2) the condition that he not leave the judicial district without the permission of the Court or the probation officer. *See* D.E. 47. Defendant's release was revoked and he was sentenced to seven months of incarceration, followed by lifetime supervision. D.E. 50. He was released again on February 1, 2018.

The USPO issued another violation report in 2018. As described by the probation officer, as part of a polygraph examination on July 18, 2018, Defendant admitted he

> had again accessed the website, "Grindr" which resulted in his engaging in random sexual activity with at least one individual. Mr. Melendez advised he was "often" on social media sites for the purpose of random sexual encounters. Further, the defendant acknowledged having active accounts on Plenty of Fish as well as Tender and stated he had recently viewed a pornographic video with a friend. The defendant also acknowledged . . . using various individuals' cell phones and computers to access social media and dating sites. Mr. Melendez had not obtained permission from the probation office to access those devices.

Judge Caldwell conducted a hearing on September 27, 2018. D.E. 54. She continued the matter for six months and released Defendant on additional conditions. *Id*. At the final hearing on March 7, 2019, the Court found that Defendant had violated his release conditions; he was released again with an additional condition prohibiting him from "owning a cell phone with internet access and a camera." *Id*.

## II.

On March 12, 2020, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges four violations.

First, the Report charges a violation of the special condition that Defendant "shall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available." According to the Report, the probation officer visited Defendant at his apartment on March 4. Defendant had a cellphone in his possession and another cellphone was found in the kitchen. Although Defendant was permitted to possess a cellphone without internet or a camera, the officer found that both phones had cameras and internet capabilities. According to the Report,

> A detailed search of the phones led to the discovery of numerous pornographic images and videos, some of which were produced by the defendant. Further, the phones revealed the defendant once again accessed Grindr, Porn Hub and Snapchat, where Mr. Melendez was utilizing the account name of "Kentuckyhung68". The defendant was also frequenting Facebook Messenger and Snapchat, where he was posting pictures of his genitalia.

This is a Grade C violation.

Per a pre-hearing agreement, Defendant ultimately stipulated to Violation #1, and the government moved to dismiss violations #2, #3, and #4. D.E. 85.

Violation #2 charges Defendant with possessing two cellphones capable of accessing the internet (as described above), a Grade C violation.

Violation #3 charges a violation of the condition that Defendant "not associate or have verbal, written, telephonic, or electronic communications with any person under the age 18 without the permission of the probation office," a Grade C Violation. According to the Report, "Text messages recovered by the probation office revealed the defendant advised another person that he was 'babysitting' a 17-year-old boy, the son of a former male intimate partner."

Violation #4 charges a violation of the condition that Defendant "must answer truthfully all questions asked by the probation officer," another Grade C violation. According to the

Report, during the March 4 home visit, Defendant initially denied that he had accessed the internet. But "after further investigation, Mr. Melendez acknowledged utilizing a neighbor's internet password for both his cell phones and television."

### III.

The Court conducted an initial appearance—via videoconference—pursuant to Rule 32.1 on March 19, 2020. D.E. 65. The Court also conducted a preliminary hearing and found probable cause to support the four violation allegations. *Id*. The government moved for interim detention; Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing (in-person) on July 23, 2020, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 85. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #1. *Id*. The government moved to dismiss the other three violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violation #1, thus the government established both under the standard of § 3583(e).

The parties agreed to a revocation term of nine months followed by lifetime supervision on the existing conditions.[1] But the defense argued that the remainder of the nine-month revocation term should be done under home incarceration (Defendant has been in jail since his arrest on March 17, 2020).

---

[1] *See* D.E. 47 at 9-13 for a discussion of why lifetime supervision is appropriate in this case and why the special conditions are warranted. Now that Defendant has twice again committed similar violations, the lifetime conditions analyzed in the earlier Recommendation are further justified.

**IV.**

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to knowing possession of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute Grade C violations. Given Defendant's Criminal History Category of IV (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months.

**V.**

Following Defendant's stipulation to Violation #1, the only issue disputed at the final hearing was whether Defendant would serve part of his nine-month revocation sentence under home incarceration.

The government argued that this was Defendant's third set of violation conduct for nearly identical behavior. Defendant's pornography usage and contact with a minor are serious because

he not only has the underlying child pornography conviction, but also a contact offense with a young male in his criminal history.[2]  Defendant's first violations resulted in a seven-month sentence, and his second set of violation behaviors were met with leniency and did not result in revocation.  Defendant also was initially deceptive this time with his probation officer.  And his behavior, accessing pornographic websites and "babysitting" a minor, could be gateways into more child porn possession or contact offenses.  Against this backdrop, the government argued, a sentence at the top of the Guidelines Range might be warranted.  However, Defendant had accepted responsibility through most of the current proceedings, and the government reasoned that his cooperation warranted a reduction in the recommended sentence.

The government further argued that home incarceration was inappropriate because such a sentence would signal trust in the Defendant's ability to comply with his release conditions.  The government argued that Defendant has no long periods of compliance that would support an expectation of compliance.  He has not earned the Court's trust.  The government argued that the Court's only potentially effective tool was to restrain Defendant's liberty for deterrence and protection of the public.  The government stressed that Defendant needs to manage the danger he poses by contacting his probation officer whenever he is tempted to access pornography.

The defense argued in favor of home detention with electronic monitoring so Defendant could work at a job and go to treatment.  The defense noted that Defendant has already been incarcerated for four and a half months, and this period was especially difficult in light of the COVID-19 restrictions.  Defendant was also hospitalized during his incarceration, and some medical records are entered in the record under seal (D.E. 84).  The defense argued that Defendant had been participating in sex offender treatment prior to his arrest and was

---

[2] Defendant pleaded guilty to sodomy of a thirteen-year-old boy in 1992.

experiencing some success. Concerning his denial of internet use, the defense stressed that Defendant was only briefly deceptive on the day of the home visit. He subsequently passed a "voice-stress analysis" and chose to admit Violation #1. The defense accordingly argued there was evidence that Defendant was changing for the better and that home incarceration would facilitate his treatment.

The defense also pointed to Defendant's health issues, including episodes of numbness and blindness and other stroke-related concerns. The defense argued Defendant has risk factors for COVID, which makes imprisonment more threatening.

Defendant addressed the Court. He said he was terrified about his health and that he had learned his lesson. He said he had on occasion reached out to his therapist (and an employee assistance program) when he was having issues. He also said he had the support of his wife and best friend, who were in the courtroom.

## VI.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of six to twelve months. The Court recommends adopting the recommended revocation sentence of nine months, but rejects Defendant's request for home incarceration.

Regarding the circumstances of the offense of conviction, possession of child pornography is a serious matter because of the great harm it causes to the victims. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553(a)(1) refers to "the original offense of conviction").

What stands out regarding Defendant's history and characteristics at this point is this is his third round of revocation proceedings for using technology in violation of his conditions. He

7

repeatedly has accessed the internet (for sexual gratification purposes) without Probation's permission. And, given his criminal history, Defendant's use of pornographic and social media websites raises the possibility of crossing the line into criminal conduct. The Court is certainly concerned about Defendant's health problems, but there was no evidence that appropriate treatment for any specified condition would not be available at a jail or prison.

Regarding the need for education and treatment, the Court heard that Defendant continues to receive sex offender treatment. He intends to continue this treatment, and should do so, but this treatment is not a substitute for incarceration in this circumstance.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The trust breach here is severe because he got caught a third time committing similar violation conduct. Again, he secretly accessed the internet. And he initially was deceptive.

One final factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence.

Based on the above discussion, the Court believes that the jointly recommended sentence of nine months of incarceration is sufficient, but not greater than necessary, to address the statutory sentencing factors. And he will continue to be subject to lifetime supervision on stringent conditions.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See*

18 U.S.C. § 3583(h).  Given the nature of Defendant's conviction, pursuant to 18 U.S.C. § 3583(h), he faces a life maximum term of supervised release following revocation.

The Court recommends reimposition of lifetime supervision.  Lifetime supervision is authorized by 18 U.S.C. § 3583(k) and is consistent with the policy statement at Guideline 5D1.2(b).  The special conditions for sex offenders are warranted under *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012).  The Court's analysis of the need for lifetime supervision at pages of Docket Entry 47 is incorporated herein and is more forceful at this point given the repeated violations of a similar nature.  The Court points out that Defendant's most recent Judgment includes a condition that "[t]he defendant shall abstain from the use of alcohol."  D.E. 50 at 5.

## VII.

Based on the foregoing, the Court **RECOMMENDS**:

(1)     Based on his stipulation, that Defendant be found guilty of Violation #1.

(2)     Upon motion of the government, that Violations #2, #3, and #4 be dismissed.

(3)     Revocation with a term of incarceration of nine months.

(4)     Re-imposition of lifetime supervision under the conditions previously imposed (D.E. 50).  The Court notes that Judge Caldwell imposed additional conditions at Docket Entries 54 and 58 that should be included in the new judgment as well.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  Within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and

normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 24th day of July, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge