UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:06-CR-13-KKC-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| WILMER MARCUS MELENDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Caldwell (D.E. 97), the Court considers reported violations of supervised release conditions by Defendant Wilmer Melendez. This is his fourth round of revocation proceedings.

**I.**

Judge Caldwell entered a judgment against Defendant in November 2006 for knowingly possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). D.E. 32. Defendant received a sentence of 132 months of imprisonment followed by lifetime supervised release, pursuant to 18 U.S.C. § 3583(k). *Id.* at 2-3. Defendant began his first term supervised release on September 18, 2015.

On June 21, 2017, the United States Probation Office ("USPO") issued a report charging three violations. According to that report:

> On June 6, 2017, the defendant submitted to a polygraph exam at the Frankfort Probation Office. It was learned through both the pretest, as well as the polygraph exam, the defendant had accessed a website by the name of "Grindr." Grindr is a gay social network app, wherein the defendant would solicit random acts of sex, from various individuals, via his cell phone. In particular, the defendant acknowledged traveling to Vine Grove, Kentucky, where he met an

unnamed male subject with whom he subsequently engaged in oral sex. The act was videotaped and forwarded to the defendant via his cell phone.

Defendant stipulated to two violations: (1) violating the condition that he not "possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available;" and (2) the condition that he not leave the judicial district without the permission of the Court or the probation officer. *See* D.E. 47. Defendant's release was revoked and he was sentenced to seven months of incarceration, followed by lifetime supervision. D.E. 50. He was released again on February 1, 2018.

The USPO issued another violation report in 2018. As described by the probation officer, as part of a polygraph examination on July 18, 2018, Defendant admitted he

> had again accessed the website, "Grindr" which resulted in his engaging in random sexual activity with at least one individual. Mr. Melendez advised he was "often" on social media sites for the purpose of random sexual encounters. Further, the defendant acknowledged having active accounts on Plenty of Fish as well as Tender and stated he had recently viewed a pornographic video with a friend. The defendant also acknowledged . . . using various individuals' cell phones and computers to access social media and dating sites. Mr. Melendez had not obtained permission from the probation office to access those devices.

Judge Caldwell conducted a hearing on September 27, 2018. D.E. 54. She continued the matter for six months and released Defendant on additional conditions. *Id*. At the final hearing on March 7, 2019, the Court found that Defendant had violated his release conditions, but he was not sentenced to prison time. He was released again with an additional condition prohibiting him from "owning a cell phone with internet access and a camera." *Id*.

The USPO issued another violation report in March 2020. According to that report, when the probation officer visited Defendant at his apartment, Defendant had a cellphone in his possession and another cellphone was found in the kitchen. Both phones had cameras and

internet capabilities. The phones contained "numerous pornographic images and videos, some of which were produced by the defendant." There was also evidence Defendant had "once again accessed Grindr, Porn Hub and Snapchat" and he was "posting pictures of his genitalia" on Snapchat and Facebook Messenger.

The 2020 report charged four violations. Defendant stipulated to the first violation, that he violated the condition prohibiting possession and viewing of pornography. The government moved to dismiss the other violations. The parties presented a proposed agreed penalty of nine months' incarceration (with continuation of lifetime supervision), which the Court accepted. D.E. 86. The defense asked that the remainder of the sentence be spent on home incarceration with electronic monitoring, but the Court denied that request. *Id*.; D.E. 88, 89. Defendant was released again on December 15, 2020.

## II.

On February 10, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three Grade C violations. According to the Report,

> On February 9, 2022, Melendez was found in possession of a cellular phone. Initially, he denied that the phone was his and reported that the phone belonged to a coworker. However, after a brief discussion, he admitted that the phone belonged to him. He stated that he purchased the phone from a coworker. Further, he explained that the cellular service was acquired through Spectrum and service was established in his name.

The Report also states that Defendant admitted accessing his "Google email account" using the phone.

First, the Report charges a violation of the special condition that prohibits Defendant "from using or owning a cellular phone." Second, the Report charges a violation of the special

condition that Defendant "must not possess or use a device capable of creating pictures or video, without the approval of the probation officer." Third, the Report charges a violation of the special condition that Defendant "not possess or use a computer or any device with access to any 'on-line computer service' at any location (including place of employment) without the prior written approval of the probation officer."

On February 15, the USPO issued an Addendum to the Report, which charges a fourth Grade C violation. According to the Addendum, an evaluation of the phone "led to the discovery of numerous pornographic images. Many of the images were produced by the defendant and were depicting his genitalia." Violation #4 is an alleged violation of the condition that Defendant must not possess any form or pornography or sexually oriented materials.

### III.

Defendant appeared via summons for an initial appearance under Rule 32.1 on February 25, 2022. D.E. 95. The government did not move for detention, so Defendant was released on his existing conditions. *Id*.

At the final hearing on March 11, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 98. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id*. He admitted having and using a cellphone to access the internet and take pictures. And he admitted possessing pornography on the phone. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 #2, #3, and #4, thus the government established them under the standard of § 3583(e).

The parties jointly proposed that Defendant receive a top-of-the-Guidelines revocation sentence of twelve months. But rather than reimposing lifetime supervision as before, the parties

requested no further supervised release. After cautious evaluation, the Court adopts that recommendation.

## IV.

The Court has evaluated the entire record, including the Report and Addendum and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to knowing possession of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would constitute Grade C violations. Given Defendant's Criminal History Category of IV (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See*

18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 18 U.S.C. § 3583(h), he faces a life maximum term of supervised release following revocation.

## V.

The first topic was the recommendation that supervision be terminated. The government began by stating that supervision has two main purposes. The first is to protect society from the potential harms indicated by the defendant's past behavior. The second is to rehabilitate the defendant, particularly to help him transition from prison into a productive normal life.

The government argued that "rehabilitation is off the table at this point." By this, the prosecutor meant the rehabilitation goal of supervision had "reached its terminal end" in Defendant's case. Defendant has received treatment and counseling. And he has violated his conditions three times already, with similar behavior in all four sets of violations. But the treatment and the penal consequences have not made Defendant into a person who can overcome his temptations and comply with all his supervision conditions. Defendant understands his conditions and he knows what he is supposed to do. Yet he continues to use the internet to search out relationships with young men. The government argued he has violated four times, and he will do it again. There is nothing more the government can do to stop him.

The government then argued that the need to protect the public from Defendant has also diminished. Although Defendant's underlying conviction was for child pornography (and although Defendant pleaded guilty pleaded guilty to sodomy of a thirteen-year-old boy in 1992), his revocation conduct has not involved child pornography. In particular, the violations from this year and from 2020 show that Defendant is using the internet to seek out relationships with young men in their 20s. The government said it has no interest in preventing Defendant from seeking relationships with adults.

The government argued that Defendant was never into "prepubescent" pornography.[1] The underlying conviction involved images of teenage boys. Now it looks like he is pursing adults.

On this point, the defense argued that, if Defendant had been obtaining child pornography, the Probation Office would have caught it (given that they caught him four times with adult pornography, in violation of his release conditions).

The defense also stressed that Defendant's violations of supervision had not involved child pornography. Defendant is now 53 years old. And law enforcement has gotten better at monitoring the movement of child pornography over the internet.

The government also said that most (but not all) online service providers are cooperating with law enforcement to combat child pornography. The essential point was that Defendant does not pose as much danger in relation to child pornography now that he is older, enforcement is more effective, he has an established history of downloading adult-only pornography, and he faces—if caught with child pornography again—what would essentially be a life sentence. The government stated it had already stressed to Defendant in a meeting prior to the hearing that, if Defendant was caught with child pornography, he would be a high-priority prosecution target as a recidivist.

The defense also noted that Defendant will continue to be on the sex offender registry for the rest of his life. And the related restrictions and reporting requirements supply an additional guard rail for Defendant's future behavior.

Defendant's Probation Officer also addressed the Court. Officer Melissa Markwell said she had spoken the day before with Defendant's mental health treatment provider, Dr. Hicks.

---

[1] This description was incorrect. Paragraphs 18-20 of the PSR indicate Defendant possessed vides of males approximately 7, 8, and 11 years of age.

7

She said Dr. Hicks believes Defendant has received the maximum benefit of treatment. Defendant has been in treatment a long time. He has the relapse prevention tools. There is nothing more to teach him. Defendant needs only to decide whether to use those preventative tools.

Concerning the recommended twelve-month sentence, the government argued that the maximum penalty was warranted due to the flagrant breach of the Court's trust. This is Defendant's fourth set of revocation proceedings on similar violation behavior. The first time, he got seven months. The second time, he was not revoked. The third time, he got nine months. Accordingly, an escalation to the maximum penalty was appropriate.

Because Defendant is on release, the defense requested that he be given a date to report for incarceration. This would give Defendant the opportunity to continue working for a while. The defense asked that, as part of the Judgment, the District Judge order Defendant to report ten days after entry of Judgment.

Defendant addressed the Court. He apologized for being back in trouble again. He agreed with his lawyer's presentation. He said he talked to his wife and mother about the charges and they all expected an escalating penalty and considered it appropriate.

## VI.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of six to twelve months. The Court recommends adopting the recommended revocation sentence of twelve months with no additional supervision to follow.

Regarding the circumstances of the offense of conviction, possession of child pornography is a serious matter because of the great harm it causes to the victims. *See United*

*States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553(a)(1) refers to "the original offense of conviction").  At the hearing, the Court reminded Defendant again of the devastating effects of child pornography on its victims.  The Court admonished Defendant to stay as far away from it as possible, particularly in the often deceptive world of online pornography.  The Court explained, as thoroughly as it possibly could, the risks of Defendant's behavior and the often irreparable harm child pornography creates.

Concerning Defendant's history and characteristics, of course, what stands out at this point is this is his fourth round of revocation proceedings for using technology in violation of his conditions.  He repeatedly has accessed the internet (for sexual gratification purposes) without Probation's permission.  And yet, despite his prior punishments and the treatment he has received, he continues to seek sexual gratification online.  According to the parties, Defendant no longer poses an acute threat of harm to children, as his activity since his release from incarceration appears to have been focused on young adult men.

Regarding the need for education and treatment, the Court heard that Defendant at this point has received a great deal of sex offender treatment.  His treatment provider says Defendant has nothing new to learn from additional treatment; what he needs to do is use the tools he has.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b).  The trust breach here is severe because he got caught a fourth time committing similar violation conduct.  Again, he secretly accessed the internet.  And he initially was deceptive.  All parties agreed this was a flagrant breach of trust and a max-Guidelines penalty is warranted.

One final factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

Based on the above discussion, the Court believes that the jointly recommended sentence of twelve months of incarceration is sufficient, but not greater than necessary, to address the statutory sentencing factors. With some hesitation, the Court also adopts the recommendation that Defendant be removed from further supervision on the basis that, while he can be expected to violate his conditions again, he does not appear to pose a danger of additional child pornography use at this point. The Court reminds Defendant of what the prosecution said—that any future child pornography possession would be met with a prosecution. And that, as a repeat offender, he would be facing severe enhanced penalties.

## VII.

Based on the foregoing, the Court **RECOMMENDS**:

(1) Based on his stipulation, that Defendant be found guilty of all four violations.

(2) Revocation with a term of incarceration of twelve months, with no supervised release to follow.

(3) That Defendant be ordered to report for BOP placement ten days after entry of Judgment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of

Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 14th day of March, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge